UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER EUGENE TAYLOR,

      Plaintiff,

v.                                Case No:  6:15-cv-242-Orl-MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Christopher Eugene Taylor's Complaint (Doc. 1) filed on February 17, 2015.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **affirmed** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

      **I.**      **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

      **A.**      **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any

other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n5 (1987).

### B.     Procedural History

On June 4, 2012, Plaintiff filed an application for disability insurance benefits asserting an onset date of September 18, 2011.  (Tr. at 95, 191-92).  Plaintiff's applications were denied initially on August 14, 2012, and on reconsideration on August 30, 2012.  (Tr. at 95, 113).  A hearing and supplemental hearing were held before Administrative Law Judge ("ALJ") Mary C. Montanus on March 6, 2013 and January 14, 2014 respectively.  (Tr. at 47-91).  The ALJ issued an unfavorable decision on June 7, 2014.  (Tr. at 26-40).  The ALJ found Plaintiff not to be under a disability from September 18, 2011, through the date of the decision.  (Tr. at 39).

On September 12, 2014, the Appeals Council denied Plaintiff's request for review.  (Tr. at 5-7).  Plaintiff filed a Complaint (Doc. 1) in the United States District Court on February 17, 2015.  This case is ripe for review.  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 15).

### C.  Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1]  An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2016.  (Tr. at 28).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 18, 2011, the alleged onset date.  (Tr. at 28).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical and lumbar spine.  (Tr. at 28).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  (Tr. at 29).  At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform less than a full range of sedentary work.  (Tr. at 29).  The ALJ determined that Plaintiff could perform the following:

> lift 10 pounds occasionally and less than 10 pounds frequently.  He can stand/walk for 2 hours in an 8-hour workday.  He can sit for 6 hours in an 8-hour workday for one hour at a time before he would need the opportunity to alternate to standing for approximately 5 minutes while on task.  He cannot climb ladders, ropes or scaffolds and cannot work at heights or with dangerous moving machinery.  He cannot crawl or perform overhead work.  He can occasionally stoop, crouch, kneel, balance and climb stairs.  He must avoid work with temperature extremes and exposure to even moderate vibration.  He could not perform constant handling, fingering or feeling with his left upper extremity.

(Tr. at 29).  The ALJ determined that Plaintiff is unable to perform any past relevant work.  (Tr. at 38).  In considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff is able to perform.  (Tr. at 38).  With the assistance of a vocational expert, the ALJ found that Plaintiff was able to perform the following jobs:  table worker (DOT 739.687-182), sedentary, with an SVP of 2; document preparer (DOT 249.587-018), sedentary, with SVP of 2; and lens inserter (DOT 713.687-026), sedentary, with an SVP of 2.  (Tr. at 39).[2]  The ALJ concluded that Plaintiff has not been under a disability from September 18, 2011, through the date of the decision.  (Tr. at 39).

### D.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*, and "SVP" refers to the Specific Vocational Preparation Code found in the *Dictionary of Occupational Titles*.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.   Analysis

On appeal, Plaintiff raises two issues.  As stated by Plaintiff, they are:  (1) the ALJ failed to properly weigh the medical evidence and failed to properly determine Mr. Taylor's RFC; and (2) the ALJ failed to properly evaluate Mr. Taylor's credibility.

### A.   Weight of medical evidence and Plaintiff's RFC

Plaintiff argues that the ALJ erred in not according significant weight to the opinions of treating physician, Dr. Azmat, or examining physiatrist, Dr. Shea.  Plaintiff contends that the ALJ failed to consider the records as a whole when weighing the consistency of the opinions from Dr. Azmat and Dr. Shea.  Moreover, Plaintiff argues that reliance on the opinions from the consultative examiner and non-examining consultants is not substantial evidence in this case. Plaintiff asserts that reliance on the opinions from the examining consultant, Dr. Barber was misplaced in that Dr. Barber examined Plaintiff on a single occasion and did so without the benefit of reviewing any of Plaintiff's medical records.  Plaintiff argues that any reliance on non-examining consultant Dr. Desai is misplaced because Dr. Desai conducted his review two years prior to the date of the ALJ's decision, the record relied upon by Dr. Desai was incomplete, and

Dr. Desai's opinion cannot override the well-supported opinions of treating physicians.  Lastly, Plaintiff argues that the ALJ determined that Plaintiff was able to perform less that a full range of sedentary work, yet none of the opinions of the physicians to which the ALJ accorded significant weight found that Plaintiff was as limited as determined by the ALJ.  Thus, Plaintiff argues that the ALJ's RFC determination is not supported by substantial medical evidence.

The Commissioner responds that the ALJ properly weighed all of the medical evidence in determining Plaintiff's RFC.  The Commissioner claims that the ALJ considered Dr. Azmat's treatment notes and found that these notes support the limitations found by the ALJ in Plaintiff's RFC.  The Commissioner contends that the ALJ provided specific reasons for failing to accord Dr. Azmat's opinion significant weight.  Those reasons included that Dr. Azmat's treatment notes did not support the limitations included in the medical source statement; the cervical spine impairments do not document the severity of the limitations found by Dr. Azmat as to reaching, handling, and fingering; Dr. Azmat's limitation findings are inconsistent with Plaintiff's reports of his daily activities and his medical improvement; and even though Dr. Azmat's findings are consistent with Dr. Shea's findings, Dr. Shea is a one-time examiner and is not entitled to any special significance.  Accordingly, the Commissioner concludes that the ALJ properly assessed the medical evidence in determining Plaintiff's RFC.

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his previous work.  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age, education, and work experience, the RFC is considered in determining whether the claimant can work.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Weighing

the opinions and findings of treating, examining, and non-examining physicians is an integral

part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.*, 877 F.

Supp. 2d 1254, 1265 (M.D. Fla. 2012).

"The Secretary must specify what weight is given to a treating physician's opinion and

any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v.*

*Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted).   The Eleventh Circuit has held

that whenever a physician offers a statement reflecting judgments about the nature and severity

of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant

can still do despite his or her impairments, and the claimant's physical and mental restrictions,

the statement is an opinion requiring the ALJ to state with particularity the weight given to it

and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir.

2011).  Without such a statement, "it is impossible for a reviewing court to determine whether

the ultimate decision on the merits of the claim is rational and supported by substantial

evidence." *Id.* (citing *Cowart v. Shweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

"Generally, the opinions of examining or treating physicians are given more weight than

non-examining or non-treating physicians unless 'good cause' is shown." *Poellnitz v. Astrue*,

349 F. App'x 500, 502 (11th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5); and *Lewis v.*

*Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  A doctor's opinion may be discredited when it

is contrary to or unsupported by the evidence of record, or the opinion is inconsistent with the

doctor's own medical records.  *Id*. (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th

Cir. 2004)).  "Where an ALJ articulates specific reasons for failing to accord the opinion of a

treating or examining physician controlling weight and those reasons are supported by

substantial evidence, there is no reversible error." *Id.* (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

### 1. Opinions as to limitations of Dr. Azmat, Dr. Shea, and the ALJ's RFC finding

After careful review and for ease of comparison, the Court will summarize the opinions as to limitations found by Dr. Azmat and Dr. Shea, and then set forth the ALJ's RFC finding. Plaintiff argues that the ALJ erred in failing to give significant weight to the opinion of treating physician, Hina Azmat, M.D., and consultative examiner, James K. Shea.

### a. Dr. Azmat

On April 3, 2013, Dr. Azmat completed a Multiple Impairment Questionnaire. (Tr. at 589-96). Dr. Azmat's diagnosis was lumbar myelopathy and disc protrusion, and cervical cord impingement. (Tr. at 589). Dr. Azmat found Plaintiff's prognosis to be guarded and progressively severe. (Tr. at 589). To support her diagnosis, Dr. Azmat listed numbness and decreased touch sensation in both hands, tenderness of the neck area, right leg weakness, and straight leg raising positive on the right side. (Tr. at 589). Dr. Azmat based her diagnosis on the MRI of the cervical area, and the MRI of the lumbar spine area. (Tr. at 590). Dr. Azmat listed Plaintiff's symptoms as pain in both arms and hands, numbness of the hands and legs, weakness of the right lower extremity, and falls. (Tr. at 590). Dr. Azmat reported that Plaintiff's pain was constant and dull with a level of 4 out of 10 with medication, and 10 out of 10 without medication. (Tr. at 590). Dr. Azmat found the following: Plaintiff could sit for 0 to 1 hour in an 8-hour workday; could stand/walk for 0 to 1 hour in an 8-hour workday; must rise and move every 15 to 20 minutes; could not sit again for 15 minutes; can lift occasionally 0 to 10 pounds; and can occasionally carry 0 to 5 pounds. (Tr. at 592). Dr. Azmat found Plaintiff to have significant limitation in repetitive reaching, handling, fingering or lifting due to his anterior

cervical cord impingement.  (Tr. at 592).  Dr. Azmat found Plaintiff to have marked limitations

bilaterally in grasping, turning, and twisting objects; in using fingers/hands for fine

manipulations; and using arms for reaching including overhead.  (Tr. at 592-93).  Dr. Azmat

found Plaintiff unable to keep his neck in a constant position.  (Tr. at 593).  Dr. Azmat found

Plaintiff to be experiencing pain constantly, and that his impairments will last at least 12 months.

(Tr. at 594).  Dr. Azmat found Plaintiff needed to take breaks or rest every 15 minutes.  (Tr. at

595).

### b.  Dr. Shea

The Court reviewed Dr. Shea's records.  (Tr. 857-869).  Dr. Shea was a medical consult

and examined Plaintiff one time.  Dr. Shea reviewed the records from Dr. Azmat, the MRIs dated

March 12, 2012 and April 23, 2012, the VA's records, and the National Pain Institute records.

(Tr. at 865-66).  Plaintiff complained of headaches, neck pain radiating into his arms with

numbness and tingling, low back pain radiating into his legs with numbness and tingling, and left

wrist pain.  (Tr. at 866).  Plaintiff rated his headaches as an 8, his neck pain as a 7-8, and his

back pain as a 5-6 on a scale of 1-10.  (Tr. at 866).  Dr. Shea found Plaintiff to have normal

posture and gait.  (Tr. at 867).  Dr. Shea found Plaintiff had moderate tenderness over occipital

nerves, supraspinous ligament, spinous processes, and trapezius muscles; and had mild

tenderness over the greater occipital nerves.  (Tr. at 867).  Dr. Shea found Plaintiff to have a

limited range of cervical motion, full manual muscle strength, limited lumbar range of motion,

and normal muscle bulk and tone in the lower extremities.  (Tr. at 868-69).  Dr. Shea assessed

Plaintiff with chronic neck pain, degenerative disc disease with resulting moderate central and

bilateral C5-6 foraminal stenosis, chronic low back pain, left lateral L5-S1 disc protrusion

recurrent after surgery, and status post lumbar spine surgery.  (Tr. at 869).

On December 16, 2013, Dr. Shea completed a Multiple Impairment Questionnaire.  (Tr. at 857-864).  Dr. Shea found Plaintiff's prognosis for future recovery was poor.  (Tr. at 857).  Dr. Shea found that Plaintiff had severe muscle spasms and significant limitations in cervical and lumbar range of motion.  (Tr. at 857).  Dr. Shea based his diagnosis on Plaintiff's MRIs.  (Tr. at 858).  Dr. Shea found Plaintiff's neck pain and low back pain to be always present, and wrist pain to be present a couple of time per week.  (Tr. at 859).  Dr. Shea determined that Plaintiff's neck pain ranged from 4-8, and Plaintiff's back pain ranged from 3-9 on a scale of 1-10.  (Tr. at 859).  Dr. Shea found Plaintiff's level of fatigue to be 3-7 or 8 on a scale of 1-10.  (Tr. at 859).  Dr. Shea found Plaintiff could sit for 2 hours, and stand/walk for 2 hours in an 8-hour day, and needed to move around every 10 minutes.  (Tr. at 859).  Dr. Shea found Plaintiff able to lift and carry 0-5 pounds frequently and 5-10 pounds occasionally.  (Tr. at 860).  Dr. Shea found Plaintiff to have limitations in repetitive reaching, handling fingering or lifting, with minimal limitations in grasping, turning, and twisting objects.  (Tr. at 860-61).  Dr. Shea found that Plaintiff would have "good days" and "bad days," and would be absent from work more than 3 times per month. (Tr. at 863).  Dr. Shea determined that Plaintiff would need to avoid wetness, temperature extremes, humidity, heights, and could not push, pull, kneel, bend, and stoop.  (Tr. at 863).

### c.  The ALJ's RFC finding

The ALJ determined that Plaintiff could:  lift 10 pounds occasionally and less than 10 pounds frequently; stand/walk for 2 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday, for one hour at a time before he would need the opportunity to alternate to standing for approximately 5 minutes while on task.  (Tr. at 29).  The ALJ found that Plaintiff could not: climb ladders, ropes or scaffolds; work at heights or with dangerous moving machinery; and crawl or perform overhead work.  (Tr. at 29).  The ALJ found Plaintiff could occasionally stoop,

crouch, kneel, balance and climb stairs, but must avoid work with temperature extremes and exposure to even moderate vibration.  (Tr. at 29).  Finally, the ALJ found that Plaintiff could not perform constant handling, fingering or feeling with his left upper extremity.

### 2. Dr. Azmat' records

Plaintiff argues that the ALJ erred in failing to give significant weight to the opinion of treating physician, Hina Azmat, M.D.  In determining Plaintiff's RFC, the ALJ did not adopt all of the findings of Dr. Azmat.  As Plaintiff's treating physician, Plaintiff claims that Dr. Azmat's conclusions concerning Plaintiff's limitations should have been given significant weight because Dr. Azmat's conclusions were based upon her examinations and the MRI results.  Specifically, Plaintiff asserts that the ALJ erred in finding Dr. Azmat's opinion inconsistent with the medical evidence as a whole, and with Dr. Azmat's treatment records.

Dr. Azmat began treating Plaintiff on January 11, 2012, for injuries he received while serving in the military in Iraq.  (Tr. at 369-370).  Plaintiff complained of injuries to his neck and lower back, claiming that he was discharged from his work with the army at the time of the appointment.  (Tr. at 369).  Dr. Azmat's medical records concerning Plaintiff continue through April 3, 2013.  (Tr. 598).  The Court carefully reviewed Dr. Azmat's medical records.  The Court finds no inconsistencies among the actual records, and the review and summary by the ALJ.  Further, Plaintiff does not assert that the ALJ inaccurately reviewed or summarized Dr. Azmat's records.

The ALJ extensively reviewed and considered the medical records in this case.  (Tr. at 31-38).  Concerning Dr. Azmat, the ALJ accurately summarized and considered Dr. Azmat's treatment notes on January 11, 2012, February 8, 2012, February 27, 2012, March 22, 2012, June 22, 2012, January 17, 2013, and April 2013.  (Tr. at 31-34).  The ALJ acknowledged that on

January 11, 2012, Plaintiff complained of pain, numbness, weakness, and tingling in his leg, yet he was able to sit comfortably and was in no acute distress.  (Tr. at 31).  The ALJ noted that Dr. Azmat found a good range of motion, no spinal tenderness, no paraspinal spasms or tenderness, normal muscle tone, gait was unremarkable, but straight leg raise tests were positive.  (Tr. at 31). In reviewing Dr. Azmat's February 8, 2012 treatment notes, the ALJ acknowledged that Plaintiff complained of pain, tingling and numbness in his right leg, and having difficulty walking. (Tr. at 31).  Again, the ALJ found Plaintiff was reported to be calm, able to sit comfortably and be in no acute distress.  (Tr. at 31).  While noting that the straight leg tests were positive, the ALJ also noted that Plaintiff's range of motion was good, no clubbing, no cyanosis, no edema, no spinal or paraspinal tenderness or spasms, normal muscle tone, normal muscle strength, and unremarkable gait.  (Tr. at 31).  The ALJ summarized Plaintiff's February 27, 2012 visit noting that Dr. Azmat found weakness and decreased sensation in his right lower extremity, positive straight leg raise tests, but normal gait, no spinal tenderness or paraspinal spasms, and normal muscle tone and strength.  (Tr. at 31).

On the March 22, 2012 visit, the ALJ noted that the examination results were essentially the same as the previous visits, with Plaintiff's pain a 5 on a scale of 1-10.  In contrast, the ALJ also noted that Dr. Azmat completed a form indicating that Plaintiff could not run, bike or do push-ups or sit-ups for a year; should not perform repetitive lifting or bending; could not carry more than 40 pounds; but was allowed to swim and could walk 2.5 miles.  (Tr. at 32).[3]  The ALJ

---

[3] Plaintiff argued that there was no evidence that he went swimming or walked up to 2.5 miles.  (Doc. 19 at 20).  On March 22, 2012, Dr. Azmat completed a chronological Record of Medical Care.  (Tr. at 358).  Dr. Azmat found Plaintiff unable to do push-ups, sit-ups, run, and bike, but was able to walk for 2.5 miles and able to swim.  (Tr. at 358).

noted that Dr. Azmat determined on June 22, 2012, that Plaintiff's pain was moderately well-controlled, he was exercising erratically, and no surgery was planned or needed. (Tr. at 33).

The ALJ summarized the January 17, 2013 visit to Dr. Azmat noting that Plaintiff complained of headaches, reported numbness and weakness in his upper extremities, and some loss of coordination. (Tr. at 33). Consistent with the prior examinations, Dr. Azmat found Plaintiff to be able to sit comfortably and in no acute distress. (Tr. at 33). While his straight leg raises continued to be positive on the right, his strength was 3/5 on the right, but there was no spinal or paraspinal tenderness or spasms. (Tr. at 33). Finally, on Plaintiff's visit in April 2013 to Dr. Azmat, the ALJ noted that Plaintiff denied joint pain, back pain, dizziness and vertigo, but felt weakness and numbness. (Tr. at 33). The ALJ again noted that Plaintiff was able to sit comfortably and appeared in no acute distress. (Tr. at 33). The ALJ acknowledged that Plaintiff had weakness in his right leg with decreased touch, but normal muscle tone and normal reflexes bilaterally, with normal gait and coordination. (Tr. at 34).

The ALJ accurately summarized Dr. Azmat's results in her medical source statement, and multiple impairment questionnaire. (Tr. at 36). In determining not to give Dr. Azmat's opinions significant weight, the ALJ carefully and thoroughly reviewed Dr. Azmat's treating records. The ALJ noted that Dr. Azmat assessed Plaintiff as being able to walk for 0 to 1 hour in an 8-hour workday, however, in documents relating to Plaintiff's military restriction, found Plaintiff able to walk 2.5 miles and swim. (Tr. at 37). Further, throughout Dr. Azmat's treating records, the ALJ noted that, at times, Plaintiff was able to sit comfortably, had normal gait, and normal strength. In addition, the ALJ noted that Dr. Azmat found that, at times, Plaintiff's pain was moderately well-controlled. Yet, Dr. Azmat determined that Plaintiff was only able to sit for 0 to 1 hour in an 8-hour workday. The Court finds that the ALJ did not err in finding that Dr. Azmat's

treatment notes do not fully support the severe limitations she found relating to Plaintiff's ability to perform work.

### 3. Medical records as a whole

The ALJ found that Dr. Azmat's opinion as well as Dr. Shea's opinion were not consistent with the medical records as a whole.  While seeing Dr. Azmat, Plaintiff also went to other medical providers, including the Veteran's Administration.  The ALJ carefully and thoroughly reviewed the records from these other medical providers.  Without repeating the ALJ's summary fully, the ALJ noted that Plaintiff went to the National Pain Institute on April 9, 2012, listed Plaintiff's complaints, noted the examination results, and included that Plaintiff received a lumbar injection.  (Tr. at 32).  In April 2012, the ALJ reviewed Plaintiff's functional status screen at the Orange City VA that found Plaintiff did not have a high level of dependence, and Plaintiff had denied that he had gait or balance problems.  (Tr. at 32).  The ALJ summarized Plaintiff's visit to the Connie True, M.D. on April 18, 2012 at the Orange City VA.  (Tr. at 32). Dr. True found, after a physical examination that Plaintiff had mild tenderness in his upper left trapezius, fair range of motion in his neck and strength of 5/5.  (Tr. at 32).  The ALJ reviewed the findings of the MRI taken on April 23, 2012, noting that it showed degenerative disc and joint disease, encroachment on the central and bilateral peripheral spinal canals, neural foramina, and moderate right anterior cord impingement with chronic right L5 radiculopathy, but no acute radiculopathic findings.  (Tr. at 32).

Next, the ALJ reviewed Plaintiff's June 12, 2012 treatment at Active Pain and Injury. (Tr. at 32).  The ALJ noted Plaintiff's gait was normal with full range of cervical motion.  (Tr. at 32).  The ALJ noted that Plaintiff has some tenderness with full range of motion and normal strength in his legs.  (Tr. at 32-33).  On June 14, 2012, Plaintiff returned to the Orange City VA

with pain of 5-6 on a 1-10 scale, but indicated he received partial or complete relief of his pain with the use of heat application, narcotics, muscle relaxants, and sleep.  (Tr. at 33).  Plaintiff returned to Dr. True on August 14, 2012 and October 2, 2012, with pain of 5-6 on a 1-10 scale, but no gait or balance problems, and a reduced range of motion in his spine with only mild tenderness in his lower lumbar region.  (Tr. at 33).

The ALJ reviewed the records from the Orange City VA from November 23, 2012 when Plaintiff reported his pain level was a 4-5 on a 1-10 scale; from December 17, 2012, when his pain was a 3-4; from December 20, 2012, when his pain was a 4-5; from January 10, 2013, when his pain was only a 2, which was an acceptable pain range for him, and he was experiencing no side effects from the medication; and from February 2013, when his pain was a 2, which was within an acceptable range, and he was experiencing no side effects from his medication.  (Tr. at 33).  The ALJ continued to review and summarize Plaintiff's visits to the Orange City VA from May 1, 2013, July 31, 2013, August 5, 2013, September 3, 2013.  (Tr. at 34-35).  Within these summaries, the ALJ noted that Plaintiff was using a cane in May, 2013 due to falls, but did not use an assistive device at the evaluation, and his pain level was a 2-3 on a scale of 1-10.  (Tr. at 34).  The ALJ noted Plaintiff's pain was a 2-4 on July 31, 2013, his pain was a 4 on August 5, 2013, and his medication was controlling his pain.  (Tr. at 34).

The ALJ reviewed and summarized an examination of Plaintiff at the Orange City VA on September 2013; an examination by Tricia Perez-Echevarria, M.D.; and an examination on August 13, 2013 at the Veterans Medical Center.  Further, the ALJ summarized the Veteran's Administration records from October 21, 2013 showing that Plaintiff had a combined disability rating of 40%.

Next, the ALJ summarized examining physician, James K. Shea, MD.'s records.  (Tr. at 35-36).  The ALJ noted that Plaintiff complained of headaches, neck pain radiating into his arms that caused numbness and tingling, low back pain radiating into his legs causing numbness and tingling, and left wrist pain.  (Tr. at 35-36).  The ALJ noted that Plaintiff had normal posture and normal gait.  (Tr. at 36).  The ALJ noted that Plaintiff had moderate tenderness in certain areas, and mild tenderness in others, but no tenderness over the cervical paraspinals and rhomboid muscles.  (Tr. at 36).  The ALJ noted that Plaintiff had a reduced range of motion in the cervical spine, but normal bulk, tone and strength in his upper extremities.  (Tr. at 36).  The ALJ noted that Plaintiff had muscle spasms in his lumbar paraspinals and a reduced range of motion, but straight leg raise tests were negative bilaterally.  (Tr. at 36).  The ALJ accurately summarized Dr. Shea's findings in his multiple impairment questionnaire.  (Tr. at 37).

The ALJ summarized medical consultant Sharmishtha Desai, M.D.'s opinion.  (Tr. at 36).  The ALJ noted that Dr. Desai found Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; could stand/walk and sit for 6 hours in an 8-hour workday; could frequently crouch and kneel; could occasionally crawl, stoop, and climb ladders, ropes, scaffolds, ramps and stairs.  (Tr. at 36).  The ALJ noted that Dr. Desai found that Plaintiff should avoid concentrated exposure to humidity and extreme cold and moderate exposure to work hazards and vibration.  (Tr. at 36).

The ALJ also summarized consultative examiner Alvan Barber, M.D.'s medical source statement.  (Tr. at 36).  Dr. Barber determined that Plaintiff could lift/carry up to 10 pounds continuously; could lift/carry 11-20 pounds frequently; could lift/carry 21-50 pounds occasionally; could sit for 8 hours; could stand/walk for 4 hours in and 8-hour workday; does not require a cane for ambulation; could continuously handle, finger, and feel; could occasionally

reach and push/pull; could frequently operate foot controls, climb ramps and stairs, and balance; could occasionally stoop, kneel, and crouch; could never crawl or climb ladders or scaffolds; could never work at unprotected heights or with pulmonary irritants or extreme temperatures; could occasionally work with humidity/wetness and vibration; and could frequently work with moving mechanical parts and operate a motor vehicle.  (Tr. at 37).  The ALJ noted that Dr. Barber found that Plaintiff could shop; travel unassisted; walk a block at a reasonable pace on rough/uneven surfaces; use public transportation; could climb a few steps using a single handrail; prepare simple meals; feed himself; could take care of his own personal hygiene; and could sort, handle, and use paper files.  (Tr. at 37).

The ALJ did not afford significant weight to the opinions of treating physician Dr. Azmat and examining physician Dr. Shea, finding that these physicians' conclusion are not consistent with the medical evidence of record as a whole.  (Tr. at 37).  The ALJ indicated that Dr. Shea's recent examination revealed that Plaintiff had a normal gait, had full strength in his extremities, and straight leg raise tests were negative.  (Tr. at 37)  Further, the ALJ pointed to an evaluation conducted by the VA in August 2013 that indicated Plaintiff had a normal gait, full strength throughout his body, with the exception of his left finger.  (Tr. at 37).  The ALJ further reviewed the records from the VA from October 2013 that revealed only mild dysesthesias, full muscle strength in his upper and lower extremities, and full sensation throughout Plaintiff's body.  (Tr. at 37).  The ALJ reviewed the lumber MRI that did not show more than mild impingement, and Plaintiff did not require the use of an assistive device for ambulation.  (Tr. at 37).

The ALJ also considered the records and opinions of Dr. Barber and Dr. Desai.  (Tr. at 37).  The ALJ afforded the opinions of Dr. Barber and Dr. Desai significant weight, even though the ALJ assessed greater limitations than found in their opinions.  (Tr. at 37).  The ALJ

determined that the record as a whole supported the limitations found in Plaintiff's RFC, and that Dr. Barber's opinion was more consistent with the record as a whole.  (Tr. at 37).

The ALJ clearly reviewed and considered the record as a whole.  The ALJ summarized a great deal of the medical evidence in this case, and summarized it accurately.  The ALJ stated with particularity the weight afforded each of the different medical opinions and the reasons she afforded them weight.  *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011). Further, the issue of whether Plaintiff is able to work is reserved to the Commissioner, and a medical source statement that Plaintiff is unable to work does not mean that the Commissioner will adopt it.  *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013).

As noted by the ALJ, the record contained evidence that:  Plaintiff's gait was normal; Plaintiff sat comfortably; at times, Plaintiff's pain level was a 2 and well-controlled; Plaintiff had full or near full strength in his extremities;  his pain was controlled by heat treatments and medication; and his pain was at an acceptable level.  The ALJ considered all of the evidence of record to determine Plaintiff's RFC.  The ALJ did not accept the limitations found by Dr. Barber, but rather, found Plaintiff to be more limited based on the other medical evidence of record.  The ALJ included the limitations from the various medical opinions that were supported by the medical record as a whole.  *Iordan v. Comm'r of Soc. Sec.*, 579 F. App'x 775, 777-78 (11th Cir. 2014).  The ALJ determined that the opinions of Dr. Azmat and Dr. Shea were not supported by the medical record as a whole, and articulated specific reasons to support these findings.  Dr. Azmat provided a conclusory opinion as to Plaintiff's limitations in the Multiple Impairment Questionnaire without tying the severe limitations to her treatment records.  Further, the ALJ did find that Plaintiff was able to perform less than sedentary work, allowing him to alternate to standing for 5 minutes after one hour of work, precluding from climbing ladders, ropes or

scaffold, and crawling, and precluding him from constant handling, fingering, or feeling with his left upper extremity.  The Court determines that the ALJ's decision was supported by substantial evidence and she did not err in finding that the opinions of Dr. Azmat and Dr. Shea should be afforded less than significant weight.  Further, the ALJ considered the medical records as a whole in determining Plaintiff's RFC, and her decision was supported by substantial evidence. Additionally, she did not err in failing to fully adopt one physician's opinion as to Plaintiff's limitations, but rather, considered the medical records as a whole to determine Plaintiff's RFC.

### B.  Credibility

Plaintiff argues that the ALJ erred in finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.  Plaintiff argues that the ALJ mischaracterized the medical evidence of record as to Plaintiff's pain and weakness by finding them not to be significant.  Plaintiff asserts that the ALJ erred in relying on evidence that Plaintiff did not consistently use an assistive device to ambulate, did not require inpatient hospitalization, had no emergency room visits, had no prolonged physical therapy, and in concluding that Plaintiff's treatment overall was conservative.  The Commissioner responds that the ALJ appropriately considered all of the evidence in making a credibility determination.

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test:  "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)).  After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be

reviewed to determine if it is based on substantial evidence.  *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)).  If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so.  [citations omitted].  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225.  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).  The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are:  "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations."  *Moreno*, 366 F. App'x. at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

The ALJ determined that Plaintiff's allegations and testimony were only partially credible.  (Tr. at 38).  The ALJ supported her credibility finding by referring to the medical evidence, finding that it did not establish the degree of pain or weakness at a level and severity that would result in debilitating limitations.  (Tr. at 38).  The ALJ noted that Plaintiff reported low levels of pain with treatment and an increasing ability to function.  (Tr. at 38).  The ALJ found that the medication prescribed did not establish any side effects that would result in debilitating limitations, and the medical records support the lack of side effects as reported by Plaintiff to various medical providers.  (Tr. at 38).  The ALJ acknowledged that there was a brief reference to the use of a cane in the medical records, but the majority of the medical records do not reference the use of an assistive device or Plaintiff denied the use of an assistive device.  The ALJ also noted that Plaintiff did not require repeated hospitalizations or emergency room visits,

or prolonged physical therapy, and the treatment for his complaints was conservative.  (Tr. at

38).  Upon review of the medical records, the ALJ noted that Plaintiff's complaints of pain

generally ranged from 2-5 on a scale of 1-10, but at the hearing he testified his pain was 7-8.

(Tr. at 38).  As noted by the ALJ, Plaintiff also responded in documents that he was able to

prepare meals, drive, do laundry, do light house cleaning, and do light home maintenance.  (Tr.

at 38).  Lastly, the ALJ noted that no medical source restricted Plaintiff to staying at home all

day, lying down during the day, or limiting activities of daily living.  (Tr. at 38).

Plaintiff argues that the fact that Plaintiff can engage in some activities does not mean

that he is disabled.  In this case, however, the ALJ did not simply review Plaintiff's daily

activities and determine he was partially credible.  Rather, the ALJ reviewed the medical records

as a whole and cited to instances that caused the ALJ to determine that Plaintiff was only

partially credible.  Plaintiff argues that the ALJ mischaracterized the record by finding the

Plaintiff did not have significant pain or weakness.  The ALJ referred to the medical records that

support her findings that Plaintiff's pain was 2-5 on a scale from 1-10 in the medical records, the

ALJ referred to the lack of side effects from the medication, lack of use of an assistive device,

and his daily activities to support the credibility finding.  Lastly, Plaintiff argues that the ALJ

cannot assume Plaintiff's course of treatment conflicts with a finding of disability.  The ALJ

considered Plaintiff's conservative course of treatment as one factor in determining Plaintiff's

credibility.  The ALJ carefully reviewed the medical evidence and other evidence in the record as

a whole in determining Plaintiff's credibility.  The Court finds that the ALJ did not err in finding

that Plaintiff was only partially credible, and her decision was supported by substantial evidence.

### III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, the

Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on March 2, 2016.


_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Counsel of Record
Unrepresented Parties